IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FIX-A-DENT, INC., a Texas corporation, )
)
        Plaintiff, )
)
vs. ) No. 04 C 7490
)
QUIKWAY DENT TECHNOLOGY, )
INC., an Arkansas corporation, et al., )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Fix-A-Dent, Inc., brought this action against defendants Qwikway Dent Technology, Inc. and Progressive Casualty Insurance Company, alleging they infringed its registered trademark, "FIX-A-DENT," in violation of the Lanham Act (the Act) and state law. Qwikway now moves for judgment on the pleadings, claiming that plaintiff's mark is invalid and should be cancelled. For the following reasons, defendant's motion is denied.

## BACKGROUND

Plaintiff is a Texas corporation that repairs cars damaged by hail and similar objects, by using a paintless dent-removal service – a special process that removes dents and preserves the car's original paint and polish. Plaintiff began operating under the name Fix-A-Dent in 1993, and ten years later it registered that name with the Patent and Trademark Office. Qwikway is an Arkansas corporation that also offers paintless dent-repair services, and plaintiff alleges that it is a preferred vendor for Progressive, who allegedly refers its customers to Qwikway.

The dispute is rooted in Qwikway's advertising campaign, which uses the phone number "1-800-FIX-A-DENT" to promote Qwikway's services. Defendants have distributed

promotional material displaying the allegedly infringing phone number in markets where plaintiff does business. Defendants continue using the allegedly infringing phone number despite plaintiff's objections and requests that they cease the practice. Plaintiff believes that the phone number is confusing to consumers, inducing them to mistake Qwikway's services for Fix-A-Dent's, and ultimately diverting them, causing plaintiff lost profits and diminished goodwill.

Plaintiff accuses defendants of trademark infringement and false designation of origin, in violation of 15 U.S.C. § 1125(a)(1)(A). It also asserts a state law claim, arguing that defendants are liable for deceptive trade practices under 815 ILCS § 510/2 and should be permanently enjoined from using the mark "FIX-A-DENT." Qwikway argues that plaintiff's mark receives no protection under the Act because it is either generic or descriptive, and contends that the mark should be cancelled.

## DISCUSSION

Qwikway seeks judgment on the pleadings under FED. R. CIV. P. 12(c). A Rule 12(c) motion is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. Northern Ind. Gun & Outdoor Shows v. City of S. Bend, 163 F.3d 449, 452 (7th Cir. 1998); Lanigan v. Village of East Hazel Crest, 110 F.3d 467, 470 n.2 (7th Cir. 1997). Plaintiff's factual allegations are accepted as true and all reasonable inferences are drawn in its favor. Hentosh v. Herman M. Finch Univ., 167 F.3d 1170, 1173 (7th Cir. 1999); GATX Leasing Corp. v. National Union Fire Ins. Co., 64 F.3d 1112, 1114 (7th Cir. 1995). Since a Rule 12(c) motion seeks judgment on the pleadings, matters outside the pleadings are excluded. Church v. General Motors Corp., 74 F.3d 795, 798 (7th Cir. 1996). A Rule 12(c) motion is granted "only when it appears beyond a doubt that the plaintiff cannot prove any facts to

support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." Brunt v. Service Employees Intern. Union, 284 F.3d 715, 718-19 (7th Cir. 2002).

"Marks are classified into five categories of increasing distinctiveness: 1) generic, 2) descriptive, 3) suggestive, 4) arbitrary, and 5) fanciful." Mil-Mar Shoe Co., Inc. v. Shonac Corp., 75 F.3d 1153, 1156 (7th Cir. 1996) (citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 767-68 (1992)). The degree of trademark protection a mark receives depends on its distinctiveness. Platinum Home Mortg. Corp. v. Platinum Fin. Group, 149 F.3d 722, 727 (7th Cir. 1998). Qwikway argues that plaintiff's mark is "generic and/or merely descriptive," of the services that it and plaintiff provide to consumers. Presumably, Qwikway contends that the mark is generic, or if it is descriptive then it lacks secondary meaning. The mark cannot simultaneously occupy both categories – a generic term receives no trademark protection and a descriptive term may receive trademark protection.[1] See Liquid Controls Corp. v. Liquid Control Corp., 802 F.2d 934, 935 (7th Cir. 1986).

Generic terms are not protectable because they "are commonly used and [do] not identify any particular source." Platinum Home, 149 F.3d at 727. A descriptive mark "'describes the ingredients, qualities, or characteristics of an article of trade or a service.'" Id. (quoting M.B.H. Enters. v. WOKY, Inc., 633 F.2d 50, 54 (7th Cir. 1980)). Descriptive marks are generally "poor means of distinguishing one source of services from another and because they are often necessary to the description of all goods or services of a similar nature'" (Gimix, Inc. v. JS & A Group, Inc., 699 F.2d 901, 906(7th Cir. 1983)) and are thus not protectable unless they have a secondary meaning that helps distinguish them from other sources. Mil-Mar, 75

---

[1] This is not to say that, as a generic term, the mark could not functionally describe a kind of good or service. See Mil-Mar, 75 F.3d at 1158.

F.3d at 1157; Ty Inc. v. Perryman, 306 F.3d 509, 513-14 (7th Cir. 2002). Suggestive, arbitrary, and fanciful terms receive trademark protection because they are inherently distinctive. Platinum Home, 149 F.3d at 727.

Plaintiff has registered "FIX-A-DENT" and we thus presume the mark is not generic, and if it is descriptive that it possesses a secondary meaning. *See* Packman v. Chicago Tribune Co., 267 F.3d 628, 638 (7th Cir. 2001). Qwikway tries to overcome that presumption by arguing that plaintiff has admitted that its mark is generic in its pleadings and brief when it states that Qwikway is in the business of fixing dents, and may tell consumers that it "fixes dents" and "fixes and repairs dents." That argument fails. What Qwikway views as a concession of genericness is nothing more than plaintiff acknowledging that it and Qwikway are competitors in the same market and may use widely adopted generic terms to promote their services to consumers in that market. Qwikway ignores the differences between "fixes dents" and "FIX-A-DENT," and it never accurately mentions plaintiff's mark in its briefs.[2] "FIX-A-DENT" and "fixes dents" are simply different terms–both in their plain language and legal significance. While "fixes dents" refers to a kind of service and is thus generic, the same cannot be said of "FIX-A-DENT," which could denote plaintiff's specific service.

It is true that the component terms of plaintiff's mark are common words that both appear in the dictionary, but they are not consequently generic. In GIMIX the district court found the phrase "auto page" to be generic, but the Court of Appeals disagreed, noting that the term was susceptible to an "abundance of meaning" and was descriptive of characteristics of plaintiff's services. GIMIX, 699 F.2d at 906-07; *see also* Liquid Controls, 802 F.2d at 937 n.5. Similarly, "FIX-A-DENT" resembles "Fixodent," a dentures adhesive, not something to

---

[2] The first sentence in defendant's motion is illustrative: "This Lanham Act case involves the eminently descriptive phrase "fix a dent."

be used to repair hail damage on one's car. Plaintiff's mark has an inherent ambiguity and a range of possible meanings, which indicates that the term does not refer to a general class or kind of service such as the terms "car wash" or "hair salon."

A firm may not trademark generic terms that are irretrievably lodged in the public domain in order to gain an unfair advantage over its competitors. Henri's Food Prods. Co., Inc. v. Tasty Snacks, Inc., 817 F.2d 1303, 1305 (7th Cir. 1987). Preventing firms from accurately communicating information to consumers risks creating market failures. See Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 163-164 (1995); Door Systems, Inc. v. Pro-Line Door Systems, Inc., 83 F.3d 169, 171 (7th Cir. 1996). Granting plaintiff exclusive use of "FIX-A-DENT" would not risk market failure because plaintiff admits, as it must, that defendant may say that it fixes and repairs dents. Thus Qwikway has no difficulty communicating any information to the public, such as the fact that it competes with plaintiff in the paintless dent-removal market.

At this early stage in the proceedings, all signs indicate that "FIX-A-DENT" is a descriptive term that describes what plaintiff does,[3] but the mark "does not identify one particular source or designate the specific origin of those services without proof of secondary meaning." Platinum Home, 149 F.3d at 728. A court considers the following factors when it considers whether secondary meaning exists: (1) direct consumer testimony; (2) consumer surveys; (3) exclusivity, length, and manner of use; (4) amount and manner of advertising; (5) amount of sales and number of customers; (6) established place in the market; and (7) proof of additional copying. Echo Travel, Inc. v. Tracel Assoc., Inc., 870 F.2d 1264, 1267 (7th Cir. 1989); see also Packman, at 639 (quoting Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc., 781 F.2d

---

[3] Plaintiff argues in its brief that its mark is suggestive. This order does not preclude it from raising that argument in the future.

604, 609(7th Cir. 1986)) ("Secondary meaning exists 'only if most consumers have come to think of the word not as descriptive at all but as the name of the product.'").

Qwikway seeks to dismiss on the pleadings, and the court's inquiry is consequently limited to the pleadings. The pleadings show that plaintiff has used the term "FIX-A-DENT" for over 10 years, and plaintiff asserts that it has established name-brand recognition. To its reply brief Qwikway has attached five exhibits consisting of results from various Internet searches, but, for purposes of this motion, we disregard that material and the corresponding portions of its reply brief. A Rule 12(c) motion may be converted into a motion for summary judgment under Rule 56, but due to the undeveloped record, such a metamorphosis would be improper.

A motion for judgment on the pleadings serves as an inappropriate vehicle for categorizing a mark, which is a fact-sensitive inquiry that typically exceeds the scope of the pleadings, particularly when deciding whether a descriptive mark has a secondary meaning. There are numerous unresolved issue of material fact, and defendant's motion is denied.

## CONCLUSION

For the foregoing reasons, defendant's motion is denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

June 7, 2005.